IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TRI COUNTY WHOLESALE** | : | |
| **DISTRIBUTORS, INC., et al.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:13-CV-317 |
| v. | : | |
| | : | |
| **LABATT USA OPERATING CO., LLC,** | : | JUDGE ALGENON L. MARBLEY |
| et al., | : | |
| | : | Magistrate Judge Deavers |
| Defendants. | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). (Doc. 27.) In their Motion, Defendants requested that this Court dismiss Count Three of Plaintiff's Complaint (Doc. 1.) For the reasons set forth herein, Defendants' Motion is **GRANTED**.

**II. BACKGROUND**

As required by Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), the Court accepts the factual allegations set forth in Plaintiffs' Complaint as true. Plaintiffs Tri County Wholesale Distributors, Inc. ("Tri County") and the Bellas Company d/b/a Iron City Distributing ("Iron City") (collectively "Plaintiffs" or the "Distributors") are distributors of alcoholic beverages. Plaintiffs had a franchise relationship with Defendant Labatt USA Operating Co., LLC ("Labatt USA Operating" or "Defendant"), a manufacturer and entity that supplies alcoholic beverages to distributors in Ohio. Tri County and Iron City entered into written distribution agreements with Labatt USA Operating in 2010 and 2011, respectively. The agreements provided Distributors

with the exclusive rights to distribute specified brands of alcoholic beverages in specified territory.

From 2009 through 2013, a series of transactions took place that changed what is now known as Labatt USA Operating's ownership. In 2009, Labatt USA Operating was a subsidiariaty of North American Breweries Holdings, LLC ("NAB Holdings"), or a NAB Holdings subsidiary. All of the membership interests in NAB Holdings were owned by KPS Capital Partners ("KPS"), a private equity firm, or a KPS affiliate. In early December 2012, KPS sold all of its membership interests in NAB Holdings to Cerveceria Costa Rica, S.A. ("CCR").

In early March 2013, Iron City and Tri County each received letters from CCR allegedly terminating their distribution agreements with Labatt USA Operating. None of the contractual conditions for termination contained in Distributors' contract with Labatt USA Operating had occurred. Defendants claimed that their right to terminate the Distributors' distribution rights was based upon the successor manufacturer provision of Ohio Rev. Code § 1333.85(D). Neither Distributor approved the termination of their respective franchises.

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *Ziegler v. IBP Hog Mkt.,* 249 F.3d 509, 511–12 (6th Cir.2001). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus,* 404 F.3d 950, 958–59 (6th Cir.2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem*

*Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir.1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell,* 545 F.3d 459, 470 (6th Cir.2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 544, 127 S.Ct. at 1964. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal,* 129 S.Ct. at 1950 (citing *Twombly,* 550 U.S at 556). A Rule 12(c) motion is granted only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.,* 395 F.Supp.2d 644, 649 (S.D.Ohio 2004).

## IV. ANALYSIS

Defendants move for judgment on the pleadings as to Count Three of Plaintiffs' Complaint, in which Distributors allege that their written contracts with Labatt constitute valuable property that is protected under the Fifth and 14th Amendments Defendants. (Doc. 1 at 12-13.) Specifically, Distributors argue that the forfeiture and transfer of Distributors' property

3

was not for any "public use," and therefore violates the Takings Clause of the Ohio and United States Constitutions. Distributors also argue that Defendants, under color of state law, are requiring Distributors to forfeit their property, and their proposed application of Ohio Revised Code § 1333.85(D) would result in an unconstitutional taking and/or deprivation of Distributors' property.

In their Motion for Judgment on the Pleadings, Defendants address the following arguments to Count Three of Plaintiffs' Complaint. First, Defendants state that the principles underlying the Takings Doctrine are not implicated in this case. The Fifth Amendment provides, in pertinent part, that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *see also Chi. Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897) (holding that the Takings Clause applies to the states). These constitutional guarantees are "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn. Cent. Transp. Co. v. New York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

A taking may assume one of two forms: *per se*, also known as a physical taking, or regulatory. *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville and Davidson Cnty.*, 130 F.3d 731, 737 (6th Cir. 1997). A physical taking occurs when "the government physically intrudes upon a plaintiff's property." *Id*. A regulatory taking occurs when a governmental enactment leaves a property owner with "no productive or economically beneficial use" of his property, *Lucas v. S. Ca. Coastal Council*, 505 U.S. 1003, 1017 (1992), or prevents the property owner from enjoying "some — but not all — economic uses." *Harris v. City of St. Clairsville*, 330 F. Appx. 68, 76 (6th Cir. 2008). Furthermore, "though the classic taking is a transfer of

4

property to the State or to another private party by eminent domain, the Takings Clause applies to other state actions that achieve the same thing." *Stop the Beach Renourishment, Inc. v. Florida*, 130 S. Ct. 2592, 2600-01 (2010) (plurality opinion). Defendants argue that Plaintiffs have not alleged a *per se* taking, and have failed to show that there has been a regulatory taking. Plaintiffs assert the opposite, stating that, under Defendants' interpretation of O.R.C. § 1333.85(D), there has been a *per se* taking.

The Supreme Court has recognized that contracts may be property within the meaning of the Fifth Amendment. *See Omnia Commercial Co. v. U.S.*, 261 U.S. 502, 508 (1923) (citing *Long Island Water Supply Co. v. Brooklyn*, 166 U. S. 685, 690 (1897); *Cincinnati v. Louisville & Nashville Ry. Co.*, 223 U. S. 390, 400 (1912)). That does not mean, however, that the termination of a contract is necessarily considered an unconstitutional action. Simply because legislative action impacts a private action does not mean there is a taking. Rather, as the Supreme Court set forth in *Omnia*, direct governmental appropriation of a contractual right is distinguishable from government action that results in a consequential loss:

> consequential loss or injury resulting from lawful governmental action the law affords no remedy… If, under any power, a contract or other property is *taken* for public use, the government is liable; but, if injured or destroyed by lawful action, without a taking, the government is not liable.

*Omnia*, 261 U.S. at 510.

This doctrine remains valid in the federal courts. In *Huntleigh USA Corp. v. United States*, 525 F.3d 1370 (Fed. Cir. 2008), plaintiff, a private airport passenger and baggage screening service, brought suit after the United States federalized airport security. The United States' action essentially transferred responsibility from the airlines to the government, and, as a result, the airlines terminated their contracts with Huntleigh. The Court characterized Huntleigh's argument, saying: "[it] must be that [the legislation] rendered the contracts and the

5

going concern value and goodwill associated with Huntleigh's screening business worthless." *Id.* at 1379. The United States maintained that the effects of the legislation were indirect consequences that frustrated Huntleigh's business interests. *Id.* The Court agreed, finding that there had not been a taking:

> any losses that Huntleigh suffered were indirect, arising only as a consequence of ATSA's elimination of the airlines' security screening obligations. In other words, ATSA had the effect of "frustrating" Huntleigh's business expectations, which does not form the basis of a cognizable takings claim.

*Id.* at 1380.

Plaintiffs argue that the taking is direct because the law relates specifically to distributor contracts. The cases relied on by Plaintiffs, *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003) and *Love Terminal Partners v. United States*, 97 Fed. Cl. 355 (Fed. Cl. 2011), examined how legislation, passed after specific property interests have been established, and aimed directly at those property interests, can be considered a taking. The legislation at issue in both cases directly affected subject property rights that had been obtained many years earlier. Here, the government has not committed a taking, and § 1333.85(D) was not created to nullify Plaintiffs' rights. Ohio Revised Code § 1333.85 was in effect when the parties entered into the franchise agreement. *Cienega Gardens* and *Love Terminal*, therefore, do not adequately support Plaintiffs' arguments.

Moreover, § 1333.85 does not target the distributors, because the law merely permits the termination of a distributors franchise. As the Ohio Supreme Court noted in its recent decision in *Esber v. Labatt*, "[t]he plain language of the statute *allows* the successor to terminate a franchise." *Esber v. Labatt*, No. 2012-0941, 2013 WL 5647792, at *4 (Ohio Oct. 17, 2013) (emphasis added). Furthermore, "Labatt Operating was in compliance with the statute when it

6

gave notice to Esber that it would be terminating Esber's franchise as a distributor of the Labatt brand products." *Id*. Ohio Revised Code § 1333.85, therefore, provides successor manufacturers with no more than what they are permitted to do at common law: cancel a contract. Though the termination of the Plaintiffs contracts resulted in consequential losses, those losses do not amount to a taking under the United States or Ohio Constitutions.

## V. CONCLUSION

For the above reasons, this Court finds that there has not been a violation of Plaintiffs' Fifth Amendment rights. Accordingly, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED.**

                                                                    s/Algenon L. Marbley
                                                                   **ALGENON L. MARBLEY**
                                                                   **UNITED STATES DISTRICT JUDGE**

**Dated: January 6, 2014**