**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRI COUNTY WHOLESALE** | : | |
| **DISTRIBUTORS, INC., et al.,** | : | |
| | : | **Case No. 2:13-CV-317** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Deavers** |
| **LABATT USA OPERATING CO., LLC,** | : | |
| **et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants' Labatt USA Operating Co., LLC,
Cerveceria Costa Rica, S.A. and North American Breweries Holdings, LLC (collectively
"Defendants") Motion to Vacate the Preliminary Injunction.  (Doc. 58).  For the reasons set forth
herein, Defendants' Motion to Vacate is **GRANTED**.

### II. BACKGROUND

*A. Factual Background*

Plaintiffs Tri County Wholesale Distributors, Inc. and the Bellas Company d/b/a Iron
City Distributing (collectively "Plaintiffs" or the "Distributors") are distributors of alcoholic
beverages. Defendant Labatt USA Operating Co., LCC ("Labatt USA Operating or "Defendant")
is a manufacturer that supplies alcoholic beverages to distributors in Ohio and with whom
Plaintiffs had a franchise relationship.  Plaintiffs entered into a written distribution agreement
with Defendant in 2010 and 2011.  The Plaintiff distributors claim the Distribution Contracts
provide them with an exclusive and indefinite right to distribute certain brands of beer and

alcohol (the "Specified Brands") in their respective territories.  *See Tri-County Contract* §§ 1.0, 2.0; *Iron City Contract* §§ 1.0, 2.0.  Plaintiffs also allege that each contract limits the reasons for which Defendant may terminate the Distributor.  *See Tri-County Contract* §§ 6.0- 6.5; *Iron City Contract* §§ 6.0-6.5.  In 2012, the brands supplied by Defendants constituted approximately 25% of sales for Tri County and 8% of sales for Iron City.  (Doc. 56 at 2).

Labatt USA Operating, as well as the sub-licensees of the Specified Brands, except Molson, is indirectly owned by Defendant North American Breweries Holdings, LLC ("NAB Holdings").  Prior to December 2012, all membership interests in NAB Holdings were owned by three entities: 1) KPS Special Situations Fund III, LP; 2) KPS Special Situations Fund III (A), LP; and 3) KPS Capital Partners (collectively "KPS"); KPS controlled the distribution rights of the Specified Brands in the United States. In October 2012, by way of a Unit Purchase Agreement, Defendant Cerveceria Costa Rica, S.A. ("CCR"), contracted to buy 100% of the membership interest in NAB Holdings from the KPS entities (The "KPS/CCR Transaction").  On the KPS/CCR Transaction closing day, KPS transferred all of its interests in NAB Holdings, including the accompanying distribution rights, to CCR or one of its affiliates.  As a result of the KPS/CCR Transaction, CCR Breweries, Inc. was merged into NAB Holdings.  NAB Holdings was the surviving entity, resulting in CCR American Breweries, Inc. having 100% ownership of NAB Holding's membership interest.  The various operating and licensing entities maintained the same corporate structure they had prior to the KPS/CCR Transaction.  Following the KPS/CCR Transaction, the Distributors continued to order the Specified Brands from Labatt USA Operating and the Specified Brands continued to be invoiced to the Distributors by Labatt USA Operating.

On March 7 and March 11, 2013, Plaintiffs received letters allegedly terminating their distribution agreements with Defendant.  Neither Distributor approved the termination of their respective franchises.  Defendants claim that their right to terminate the Distributors' distribution rights is grounded in the successor manufacture provision of Ohio Rev. Code § 1333.85 (D).

### B. Procedural Background

Plaintiffs filed a complaint alleging breach of contract and additionally sought a declaratory judgment, asking this Court to find one of the following: (1) that Defendants are prohibited from terminating their distribution franchises with Labatt under O.R.C. § 1333.85 (D); or (2) that Defendants' action under O.R.C. § 1333.85(D) is considered an unconstitutional taking.  (Doc. 1).  Shortly after filing their complaint, Plaintiffs moved for a preliminary injunction seeking to enjoin Defendants from terminating their contracts, and from taking any actions that would frustrate or prevent delivery of the brands at issue.  (Doc. 9).  Following a preliminary injunction hearing, the Court granted Plaintiffs' motion.  (Doc. 56).

On October 17, 2013, the Ohio Supreme Court issued its opinion in *Esber Distributing Co. v. Labatt USA Operating Co., LLC.,* No. 2012-0941, 2013 WL 5647792 (Ohio Oct. 17, 2013).  Subsequently, Defendants moved this Court to vacate its preliminary injunction order.  Defendants allege that the ruling in *Esber* permits a "successor manufacturer to terminate a written franchise agreement without cause" pursuant to O.R.C. § 1333.85(D) and, therefore, Plaintiffs no longer have a likelihood of success on the merits of any of their claims.  (Doc. 58 at 3).  The matter has been fully briefed and is, therefore, ripe for review.

### III. STANDARD OF REVIEW

A preliminary injunction is a remedy used by the court to preserve the status quo between

the parties pending trial on the merits.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

When determining whether to grant a preliminary injunction, this Court must balance the

following four factors: "(1) whether the movant has shown a strong likelihood of success on the

merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3)

whether the issuance of the injunction would cause substantial harm to others; and (4) whether

the public interest would be served by issuing the injunction."  *Overstreet v. Lexington-Fayette*

*Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  These factors are to be balanced against

one another other and should not be considered prerequisites to the grant of a preliminary

injunction.  *United Food & Commercial WorkersUnion, Local 1099 v. Sw. Ohio Reg'l Transit*

*Auth.*, 163 F.3d 341, 347 (6th Cir. 1998).  As an extraordinary remedy, a preliminary injunction

is to be granted only if the movant carries his or her burden of proving that the circumstances

clearly demand it.  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Significantly, "[a]t the preliminary injunction stage, 'a plaintiff must show more than a

mere possibility of success,' but need not 'prove his case in full.'" *Northeast Ohio Coalition v.*

*Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network,*

*LLC v. Tenke Corp.,* 511 F.3d 535, 543 (6th Cir. 1997) (citations omitted)). Furthermore, "it is

ordinarily sufficient if the plaintiff has raised questions going to the merits so serious,

substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more

deliberate investigation."  *Id.*  (alterations original) (quoting *Six Clinics Holding Corp., II v.*

*Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir. 1997)).

Under Fed. R. Civ. P. 60(b), federal courts are allowed to relieve a party or its legal

representative from a final judgment, order, or proceeding if the judgment is void; the judgment

was based on an earlier judgment that has been reversed or vacated or applying it is

4

prospectively no longer equitable; or any other reason that justifies relief. A motion under Rule 60(b) must be made within a reasonable time.

## IV. LAW & ANALYSIS

At issue here are the first and fourth prongs of the preliminary injunction standards: whether Plaintiff has a likelihood of success on the merits; and whether granting a preliminary injunction would serve the public's interest.  Since defendant does not challenge the remaining two prongs of the preliminary injunction analysis, the Court need only address the parts at issue.

### A.  *Likelihood of Success on the Merits*

Defendants argue that, in light of the Ohio Supreme Court's ruling in *Esber*, the Plaintiffs no longer have a likelihood of success on the merits of any of their claims, which justifies vacating the October 16, 2013 preliminary injunction.  (Doc. 58 at 3).  In *Esber*, the court permitted a "successor manufacturer to terminate a written franchise agreement without cause." *Esber*, 2013 WL 5647792, at *14.  As a result of this decision, Defendants argue that no significant issue exists to warrant fair grounds for litigation on any of Plaintiffs' claims.

Plaintiffs assert that the *Esber* decision does not "materially change" the equities which warranted the injunction and that the transaction and distribution agreement at issue in *Esber* are materially different from those involved in this case.  (Doc. 61 at 1-2).  Further, Plaintiffs insist that the legal issue decided in *Esber* is only one of many bases which support their claim.  (*Id.*). Plaintiffs refer back to their argument that the transaction here does not trigger a manufacturer's right to terminate under Ohio Rev. Code §1333.85(D) and their claim under the Takings Clause of the Ohio and United States Constitutions also presents fair ground for litigation.  (*Id.* at 2-3).

Plaintiffs argue that there are other bases that independently present fair ground for litigation and more deliberate investigation.  This Court, however, previously found that

Plaintiffs' only argument that had a likelihood of success on the merits was their claim that O.R.C. §1333.85(D) applies only to distributors who do not have a written contract following the successor manufacturer transaction.  (Doc. 56 at 15-26).

Sound judicial discretion may require the modification of the terms of an injunctive decree if the circumstances, whether of fact or law, obtained at the time of its issuance have changed, or new ones have arisen.  *System Federation No. 91 Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961).  At the time the preliminary injunction was granted, this question of whether §1333.85(D) applied to written franchises was before the Ohio Supreme Court and had not yet been decided.  This Court concluded, that, "unless and until" the Ohio Supreme Court overruled the Stark County Court of Appeals decision, which upheld the application of §1333.85(D) to written contracts, Stark County's decision remained good law.  (Doc. 56 at 20-21).  Further, given the Ohio Supreme Court's decision to accept jurisdiction of *Esber Beverage Co. Labatt USA Operating Co., LLC.*, this Court found that Plaintiffs  had raised an issue so "significant" as to be "fair ground for litigation" and this weighed in favor of granting a preliminary injunction at this stage.  (*Id.*).

The Supreme Court of Ohio has since decided that the Ohio Rev. Code §1333.85(D) permits a successor manufacture to terminate a written franchise agreement without cause. *Esber,* 2013 WL 5647792 at *14.  The Ohio Supreme Court stated in its opinion that, "the definition of franchise includes both written franchise agreements and franchise agreements that have arisen by operation of law."  *Id.*  Further, permitting a successor manufacture to terminate a written franchise agreement without cause is "clearly permitted" under O.R.C. § 1333.85 (D), provided that the successor manufacture gives written notice of the termination to the distributor within 90 days of the sale, merger, or acquisition and the distributor is compensated for the lost

value of the franchise. *Id.* Thus, O.R.C. § 1333.85 (D) does apply to written franchise agreements. Accordingly, Defendants were permitted to terminate their written franchise agreement with Plaintiffs, as long as they provided a written notice of the termination to the Plaintiffs within 90 days of the KPS/CCR Transaction, and compensated Plaintiffs for the lost value of the franchise.

Plaintiffs reject *Esber* because the transaction *sub judice* was "materially different" and far more remote than in *Esber*. Additionally, Plaintiffs refute the application of *Esber* because the Ohio Supreme court did not address the Takings Clause issue that plaintiffs had previously raised. Finally, Plaintiffs claim that, because the distributors in *Esber* had filed a motion for Reconsideration, it would be inappropriate to vacate the injunction. (Doc. 61 at 6-7).

Nothing in the court's opinion indicates that the Ohio Supreme Court intended its decision to only apply to certain, less remote transactions. Moreover, the court did not limit *Esber's* applicability such that it would not apply to cases that raise different but related issues, such as Plaintiffs' Taking Clause argument. The Ohio Supreme Court denied the distributor's motion for Reconsideration of the court's decision in *Esber*. (Doc. 68). As such, Plaintiffs' argument that *Esber* is inappropriate due to pending litigation is moot.

This Court was aware of the pending *Esber* litigation when it issued its injunction. Now that the Ohio Supreme Court has issued its decision in *Esber*, Plaintiffs' claims have been clarified. Plaintiffs no longer have a likelihood of success on the merits. Thus, vacating the preliminary injunction is proper.

### B. Public Interest

The final factor Defendants challenge is whether the public interest weighs in favor of vacating the preliminary injunction. Defendants argue that the fourth factor under the preliminary injunction standard, whether the public interest would be served through the

issuance of the preliminary injunction, weighs in their favor because it is in the public's interest to enforce "the relevant provisions of the Ohio Revised Code" and the O.R.C. now requires that the injunction be vacated.  (Doc. 58 at 4).

Plaintiffs argue that this Court's reasons for granting the preliminary injunction have not changed, noting that the injunction preserves the public's ready access to the Brands, prevents job losses and ensures that the termination of Plaintiffs' franchises comports with Ohio law. (Doc. 61 at 5).  Defendants do not challenge Plaintiffs' claims that the preliminary injunction serves the public's interest with respect to preventing job loss and preserving the public's access to the Specified brands.  Defendants do, however, argue that the most compelling public consideration here, whether the Defendant's termination of Plaintiffs' franchises comports with Ohio law, is no longer at issue as a result of the *Esber* decision.

A court may modify a final judgment when it finds that it is no longer equitable that the judgment should have prospective application.  *Horne v. Flores*, 557 U.S. 433, 447 (2009). This Court held that issuing an injunction would serve the public interest by "ensuring that Defendant's termination of Plaintiff's franchises comports with Ohio law."  (Doc. 56 at 31).   In *Esber*, the Ohio Supreme Court declared that Labatt Operating Co. is a successor manufacturer and was "clearly permitted" under O.R.C. 1333.85(D), to terminate a written franchise agreement without cause, provided that written notice of the termination was given to the distributor within 90 days of the sale, merger or acquisition and the distributor is compensated for the lost value for the franchise.  *Esber*, 2013 WL 5647792 at *14.  Thus, under O.R.C. 1333.85(D), Defendants were in compliance with Ohio law when they provided notice to Plaintiffs that they would be terminating their contracts.  As such, the public's interest in the enforcement of the relevant O.R.C. provisions, no longer weighs of the preliminary injunction.

## V. CONCLUSION

Based on the foregoing, the Court finds the balance of factors weighs in favor of vacating the preliminary injunction in this action.  Defendants' Motion to Vacate the Preliminary Injunction is therefore, **GRANTED**.

**IT IS SO ORDERED.**

    **s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED: August 14, 2014**