**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TRI COUNTY WHOLESALE** | **:** | |
| **DISTRIBUTORS, INC., et al.,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | **Case No. 2:13-CV-317** |
| **v.** | **:** | |
| | **:** | |
| **LABATT USA OPERATING CO., LLC,** | **:** | **JUDGE ALGENON L. MARBLEY** |
| **et al.,** | **:** | |
| | **:** | **Magistrate Judge Deavers** |
| **Defendants.** | **:** | |
| | **:** | |

**I.      Introduction**

This matter is before this Court on Plaintiffs' motion for a stay pending appeal pursuant to Federal Rule of Civil Procedure 62(d), without a requirement that they post a supersedeas bond. For the reasons set forth herein, Plaintiffs' motion is **GRANTED in part and DENIED in part**.

**II.      Background**

The facts of this case are set forth fully in this Court's December 11, 2014 Summary Judgment Order. (Doc. 91). For the purposes of this Order, the Court reiterates the following facts. This action arises out of the Defendants' intent to terminate certain beer and flavored malt beverage distribution contracts in what the Plaintiffs alleged was a contravention of O.R.C. § 1333.82-7, the Ohio Alcoholic Beverages Franchise Act ("Franchise Act" or "Act"). The Act governs the contractual relationship between beer distributors and manufacturers.

Plaintiffs Tri County Wholesale Distributors, Inc. ("Tri County") and the Bellas Company d/b/a Iron City Distributing ("Iron City") (collectively "Plaintiffs" or the

"Distributors") are the exclusive distributors of Labatt, Genesee, Seagram's Honey Brown, Dundee, Imperial and Dog Bite alcoholic beverages ("NAB Brands" or "Brands") in their respective territories. Plaintiffs distribute these Brands under their franchise relationships with Defendant, Labatt USA Operating Co. ("Labatt" of "Labatt USA").

Labatt is the supplier of the NAB Brands; NAB Holdings, Inc. ("NAB" or "NAB Holdings") is a holding company parent of Labatt; and Cerveceria Costa Rica, S.A. ("CCR") is a holding company parent of NAB (collectively "Defendants"). Prior to December 11, 2012, all membership interests in NAB Holdings were owned by three entities: 1) KPS Special Situations Fund III, LP; 2) KPS Special Situations Fund III (A), LP; and 3) KPS Capital Partners (collectively "KPS" or the "KPS entities"). By a Unit Purchase Agreement dated October 25, 2012, CCR, through its affiliate, CCR Breweries, Inc., contracted to buy 100% of the membership interests in NAB Holdings from the KPS entities (the "KPS/CCR Transaction"). On December 11, 2012, KPS transferred all of its interests in NAB Holdings – including the accompanying distribution rights – to CCR or one of its affiliates. As part of the KPS/CCR Transaction, CCR Breweries, Inc. was merged into NAB Holdings with NAB Holdings being the surviving entity, resulting in CCR American Breweries, Inc. owning 100% of NAB Holding's membership interests. From December 11, 2012 to the present, CCR American Breweries, Inc. has been owned 100% by CCR.

Below the level of NAB Holdings, the various operating and licensing entities retained the same corporate structure they had prior to the KPS/CCR Transaction. Following the KPS/CCR Transaction, the Distribution Contracts between Plaintiffs and Labatt USA Operating remained in place, the Distributors continued to order the Specified Brands from Labatt USA

Operating, and the Specified Brands continued to be invoiced to the Distributors by Labatt USA Operating.

In March of 2013, Distributors received letters from CCR purporting to terminate the distribution contracts between them and Labatt USA. The sole basis on which Defendants relied to terminate the Distributors' distribution rights was the successor manufacturer provision of Ohio Rev. Code §1333.85(D).[1]

### B. Procedural History

On April 4, 2013, Plaintiffs filed a complaint seeking the following: (1) a finding that the Defendants had breached the distribution contracts by attempting to terminate them in violation of their terms, and by attempting to appoint a different distributor for the Specified Brands in the Distributors' respective territories;  (2) a declaratory judgment in which the Court declares the Distributors' rights under the Franchise Act and their distribution contracts with Labatt, specifically seeking a declaration that none of the Defendants may terminate, or cause the termination of, the Distributors' existing franchises with Labatt because they are not successor manufacturers within the meaning of the Act; (3) a declaratory judgment in which the Court

---

[1] O.R.C. §1333.85(D) provides:

> If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. Any notice of termination or nonrenewal of the franchise to a distributor of the acquired product or brand shall be received at the distributor's principal place of business within the ninety-day period. If notice is not received within this ninety-day period, a franchise relationship is established between the parties. If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal.

declares that Defendants' proposed application of the Franchise Act and termination of the franchises would result in an unconstitutional taking; and, alternatively, (4) a determination of the diminished value of Defendants' business pursuant to § 1333.851 of the Franchise Act should the Defendants prevail on the preceding three counts. (Doc. 1).

On April 11, 2014, Plaintiffs moved for a preliminary injunction seeking to enjoin Defendants from terminating their contracts and from taking any actions that would frustrate or prevent their distribution of the Brands. (Doc. 9). Following a preliminary injunction hearing, the Court granted Plaintiffs' preliminary injunction on October 16, 2013, but only on one basis. (Doc. 56). The Court found fair ground in litigation on Distributors' argument against application of § 1333.85(D) to written franchises contracts, because that issue had been accepted for discretionary review by the Ohio Supreme Court, and the decision was pending. *See Esber Beverage Co. v. Labatt USA Operating Co.*, 2013-Ohio-4544, 138 Ohio St. 3d 71 *reconsideration denied,* 2014-Ohio-566, 138 Ohio St. 3d 1418.

The Court also held, however, that Plaintiffs were unlikely to succeed on the merits of the following proposed findings of law: (1) CCR is not a "successor manufacturer" for the purposes of O.R.C. § 1333.85(D); (2) the distribution contracts preclude a successor manufacturer from terminating pursuant to O.R.C. § 1333.85(D) absent a basis under the contracts for such termination; and, (3) Defendants' termination of the contracts pursuant to O.R.C. §1333.85(D) constitutes an unconstitutional taking.

On October 17, 2013, however, the Ohio Supreme Court issued its opinion in *Esber*, holding that O.R.C. §1333.85(D) permitted a "successor manufacturer" to terminate a written franchise agreement, without cause, assumed in its purchase of another manufacturer, brand, or product. *Id.* Subsequently, Defendants moved this Court to vacate its preliminary injunction

order pursuant to the holding in *Esber*. This Court found in Defendants' favor on August 14, 2014. (Doc. 73). Plaintiffs appealed the Court's order vacating the preliminary injunction, but subsequently dismissed their appeal. (Doc. 99).

In addition, on May 9, 2013, Defendants moved for judgment on the pleadings to dismiss Count III—that termination of the contracts pursuant to O.R.C. §1333.85(D) would constitute an unconstitutional taking. The Court granted Defendants' motion on January 6, 2014, holding that though termination of the Plaintiffs' contracts resulted in consequential losses, those losses did not amount to a taking under the United States or Ohio Constitutions. (Doc. 66).

On September 15, 2014, Defendant moved for Partial Summary Judgment on Counts I and II, (Doc. 78), and Plaintiff cross-motioned for Summary Judgment. (Doc. 80). On December 11, 2014 the Court granted summary judgment to Defendants on Distributors' claims for breach of contract (Count I), and on the Distributor's request for a declaratory judgment finding that the Defendants' violated the Franchise Act (Count III), concluding that CCR was a successor manufacturer entitled to terminate the franchise agreements under O.R.C. § 1333.85(D). (Doc. 91). The Court's Summary Judgment Order thus resolved the legality of the Defendants' termination of Distributors' franchise agreements.

Pursuant to Count IV of Plaintiffs' Complaint and O.R.C. § 1333.851[2], the Court held a bench trial to determine the diminished value of the Plaintiffs' businesses due to loss of the Brands. Following the bench trial, and pursuant to Fed. R. Civ. P. 52, this Court determined that Plaintiff Tri County was entitled to a payment of $2,756,459 to compensate it for the diminished value of its business as a result of the loss of the NAB Brands, and Plaintiff Iron City was

---

[2] O.R.C. § 1333.851(B)(3) provides that if parties are unable to negotiate a diminished value amount pursuant to § 1333.85(D) within 90 days of the termination date, then either party can bring a suit for judicial determination of diminished value of the distributor's business.

entitled to a payment of $302,720 to compensate it for the diminished value of its business as a result of the loss of the NAB Brands. (*June 24, 2015 Findings of Fact and Conclusions of Law*, Doc. 135).

On June 29, 2015, Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit appealing the following orders of this Court: (1) the January 6, 2014 Order granting Defendants' Motion for Judgment on the Pleading on Count III; (2) the December 11, 2014 Order granting Defendants' Partial Motion for Summary Judgment on Counts I and III; and (3) the June 24, 2015 Findings of Fact and Conclusions of Law on Count IV determining diminished value, and the Court's June 24, 2015 Judgment Entry granting judgment in favor of the Defendants. On the same day, Plaintiffs filed the Motion to Stay Pending Appeal pending before this Court. (Doc. 138).

On July 13, 2015, Defendants filed a notice of cross-appeal of the June 24, 2015 Findings of Facts and Conclusions of Law. (Doc. 139). Defendants did not seek a stay pending appeal.

### III.    Discussion

Plaintiffs seek a stay of this Court's June 24, 2015 Judgment, pursuant to Fed. R. Civ. P. 62(d), without a requirement that they post a supersedeas bond. They argue that such a stay is routine and automatic under Rule 62(d) upon the posting of a sufficient supersedeas bond. *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). They further contend that courts have construed the posting of a bond requirement to be discretionary, and that this is a case in which the Court should exercise its discretion to waive the supersedeas bond requirement. *Id*. They submit that the purposes of such a bond—to preserve the status quo and protect the prevailing parties from loss—are not served by requiring a bond from the appealing party in this case, because the prevailing party here, the Defendant, must pay the money judgment under the requirements set forth in the Franchise Act. Plaintiffs urge the Court, therefore, to find that an

unsecured stay of judgment pending appeal will itself preserve the status quo and protect all parties' interests while the appeal is pending.

Defendants counter that: (1) O.R.C. § 1333.851(A)(4) expressly provides that an appeal from the trial court's diminished value determination does not stay the transfer of the brands, thus prohibiting a stay in this case; (2) Rule 62(d) is inapplicable in the case *sub judice* because Plaintiffs are not appealing from a "money judgment" against them, and, even if they were, they have not met their burden of showing extraordinary circumstances warranting a waiver of the Rule 62(d) bond requirement; and, (3) even if this Court finds Rule 62(c) applies, Plaintiffs are not entitled to a discretionary stay under the applicable factors warranting a stay under Rule 62(c).

The Court first will address whether O.R.C. § 1333.851(A)(4) supersedes this Court's power to stay the judgment pending appeal under Fed. R. Civ. P. 62, and second will address whether a stay is appropriate under Rule 62.

## A. Whether Application of Rule 62 Would Violate O.R.C. § 1333.851

Defendants contend that now that this Court has determined the diminished value to which the Plaintiffs are entitled for the loss of the NAB Brands, and because the Defendants are willing and ready to pay those amounts as determined by this Court, O.R.C. § 1333.851(B)[3] precludes a stay. That provision states that "with respect to the merger, acquisition, or purchase of a manufacturer by a successor manufacturer . . . under division (D) of section 1333.85 of the Revised Code, all of the following apply":

> (2) If the distributor and successor manufacturer are unable to negotiate in good faith or are unable to resolve the distributor's diminished value within ninety days of the date that notice of termination is given, either party may bring an action in the court of common pleas of the county in which the distributor's principal place

---

[3] Defendants refer to this provision at 1333.851(A), but it is in fact 1333.851(B).

of business in this state is located within ninety days of the date that notice of termination is given, except that the parties may mutually agree in writing to extend that ninety-day period.

(3) The court of common pleas shall determine the diminished value of the distributor's business within ninety days after the action is filed. The successor manufacturer shall pay the distributor the amount of diminished value the court determines. ***Upon payment of that amount by the manufacturer to the distributor, the successor manufacturer may transfer the brands to a new distributor.***

(4) Either party may appeal the decision of the court of common pleas to the court of appeals. ***The filing of an appeal does not stay the successor manufacturer's payment of diminished value to the distributor or the successor manufacturer's transfer of brands to a new distributor***.

O.R.C. § 1333.851(B)(2)-(4) (emphasis added). In contrast, Rule 62(d) states that once the court approves the appellant's supersedeas bond, the stay takes effect automatically. Defendants contend, therefore, that because Rule 62(d)'s automatic stay provision would abridge the Defendants' substantive rights under O.R.C. § 1333.851(A)(4), Rule 62(d) cannot be applied in this case.

Defendants depend on *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 339 (2010) to argue that under the two-step framework for resolving conflicts when both a state substantive law and a federal rule of procedure appear to govern a question before a federal court sitting in diversity, this Court should find that O.R.C. §§ 1333.85(D) and .851(A)(4) grant a substantive right to Defendants. Specifically, Defendants state that now that this Court has calculated the diminished value owed to the Distributors for the termination of their distribution contracts, they have the right to pay the amount determined by the Court to the Distributors, and regain the legal authority to transfer those rights to a new distributor of its choosing.

According to the plain language of O.R.C. §§ 1333.85(D)-.851, this Court finds no conflict between the state law and federal rule, and thus need not pursue an inquiry under *Shady*

*Grove*. Defendants' argument pertaining to the conflict between Rule 62 and O.R.C. § 1333.851(B)(4) mirrors its argument made to this Court regarding its request for emergency relief under § 1333.851(B)(5), which this Court denied on February 12, 2015. In that request, Defendants contended that they were entitled to the emergency relief prescribed under (B)(5), which states:

> If the court is unable to determine the diminished value of the distributor's business within ninety days after the action is filed, ***the court shall order the successor manufacturer to pay its last good faith offer to the distributor on the ninety-first day after the action is filed and shall treat the manufacturer's application for that order as a request for emergency injunctive relief without the need for any showing of irreparable harm. Upon payment of the amount of its last good faith offer to the distributor, the successor manufacturer may transfer the brands to a new distributor.*** After the successor manufacturer's payment of that amount to the distributor and its transfer of the brands, the court shall determine the diminished value of the distributor's business. The successor manufacturer shall pay the distributor the amount of the diminished value determined by the court less the amount of its last good faith offer previously paid pursuant to division (B)(5) of this section.

This Court held that (B)(5) did not apply to the circumstances at hand because the Plaintiffs brought this action challenging CCR's status as a "successor manufacturer," and, thus, challenging CCR's standing to avail itself of O.R.C. § 1333.85(D) to terminate the franchise agreements. Accordingly, the Court held that until this action was resolved fully on the merits, including by the resolution of any potential appeals, Defendants could not pursue relief under O.R.C. § 1333.851(B)(5) because the Franchise Act presupposes that the entity which sends the termination notice is a successor manufacturer qualified to avail itself of O.R.C. § 1333.85(D).

The same rationale applies to Defendants' argument pursuant to O.R.C. § 1333.851(B)(3)-(4). While it is true that this Court has determined that CCR is a successor manufacturer entitled to avail itself of the provisions under §§ 1333.85(D) and .851(B)(4), as well as determined the diminished value of Plaintiffs' businesses, Plaintiffs have appealed these

merits findings to the Sixth Circuit. As will be explained in the following section, this Court

finds a stay of the Judgment pending appeal is appropriate. Therefore, nothing in the language of

O.R.C. §§ 1333.851(B)(3)-(4), nor the case law, directs this Court to deny a stay pending appeal

and order CCR to pay the diminished value as determined by this Court—thus permitting it to

transfer brands—even though its standing to avail itself of those provisions is still being

challenged in a court of law. As determined in the February 2015 order, "[s]uch an order would

defy all judicial process."

### B.  Application of Rule 62

The rare character of the judgment in this case complicates what is normally a

straightforward determination of an appellant's right to a stay of a district court's judgment

pending appeal. First, Plaintiffs sought a finding of breach of contract due to Defendants' attempt

to terminate the distribution contracts, although the Defendants had yet to take any legal action to

enforce a transfer of the Brands. Further, Plaintiffs sought declaratory relief in the form of a

declaration that the Defendants may not terminate the franchises because none of the Defendants

is a successor manufacturer within the meaning of the Act, as well as a declaration that

Defendants' attempt to terminate the contracts would result in an unconstitutional taking. This

Court found that CCR was a successor manufacturer, and thus was entitled to avail itself of

O.R.C. § 1333.85(D). According to this determination, the Defendants were permitted under the

Act to move forward with the diminished value determination outlined in O.R.C. §§ 1333.85(D)-

.851(B); this would normally facilitate a transfer of brands, except that Plaintiffs are now

challenging this Court's finding that Defendants were entitled to avail themselves of O.R.C. §§

1333.85(D)-.851(B) at all. Further, the diminished value determination was not a damages

determination per se, but was more a valuation pursuant the Distributors' statutory right to be

compensated for the termination of its otherwise interminable franchises due to a change in ownership of the manufacturer. Thus, in this unusual instance, should this Court deny a stay pending appeal, or should the Plaintiffs lose on appeal, the Defendants will pass the money judgment to the Plaintiffs, immediately entitling the Defendants to transfer the Brands to a new distributor. While in their cross-appeals both parties appeal this Court's monetary determination of diminished value, the Sixth Circuit only will reach that issue if it finds that Plaintiffs were not entitled to the declaratory relief they seek. Thus, the pressing question is whether Plaintiffs are entitled to a stay of this Court's declaratory relief findings.

Rule 62 nowhere refers to declaratory relief. Instead, the Federal Rules of Civil Procedure imposes two distinct standards for stays of judgments: (1) those involving injunctions, *see* Fed. R. Civ. P. 62(c), and stays of other judgments, *see* Fed. R. Civ. P. 62 (d). Plaintiffs urge this Court to find that they are entitled to a stay as a matter of right under Rule 62(d), and further, that this Court should exercise its discretion to waive Rule 62(d)'s supersedeas bond requirement. In essence, Plaintiffs seek an unsecured stay, and have chosen Rule 62(d) as its avenue for the grant of an unsecured stay. Fed. R. Civ. P. 62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d). 62(a)(1) and (2) include " (1) an interlocutory or final judgment in an action for an injunction or a receivership; or (2) a judgment or order that directs an accounting in an action for patent infringement," but plainly fail to include declaratory relief. Under Rule 62(c)

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c).

Defendants put forth that Rule 62(d) is inapplicable because Plaintiffs do not appeal from a monetary judgment. They further contend that even if Plaintiffs had attempted to request a stay under Rule 62(c)—which by its language only applies to injunctive relief—the standards for granting a stay pending appeal of a grant or denial of an injunction are the same as those for granting a preliminary injunction, and Plaintiffs cannot meet their burden under that standard. *See Holden v. Heckler*, 584 F. Supp. 463, 497 (N.D. Ohio 1984). Neither party squarely addresses the primary issue, which is how to apply Rule 62 to a stay of a declaratory judgment. The inquiry before the Court, therefore, requires a deeper investigation into the history and purpose behind Rules 62(c) and (d).

The Sixth Circuit has held that Rule 62(d) "entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right." *Arban* 345 F.3d at 409. A stay as of right, however, is "contingent upon the posting of a court approved supersedeas bond." *Hamlin v. Charter Twp. of Flint,* 181 F.R.D. 348, 351 (E.D. Mich. 1998). The supersedeas bond serves the dual role of protecting the non-appealing party "from the risk of a later uncollectible judgment" and also "provides compensation for those injuries which can be said to be the natural and proximate result of the stay." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988), *Moore v. Townsend,* 577 F.2d 424, 427 (7th Cir. 1978) (citing *Weiner v. 222 East Chestnut St. Corp.,* 303 F.2d 630, 634 (7th Cir. 1962)).

Nonetheless, the Sixth Circuit in *Arban* also held that Rule 62(d) "in no way necessarily implies that filing a bond is the only way to obtain a stay. It speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion." 345 F.3d at 409. Plaintiffs rely on this rule to contend that this is precisely the kind of case in which the Court should exercise its discretion, and grant a stay pursuant to Rule 62(d), but waive

12

the bond requirement. They argue that a monetary bond is unnecessary, since the stay itself preserves the status quo.

A closer look at the case law shows, however, that the recognized instances under which a court appropriately exercises its discretion to dispense with the bond requirement, or fashion an alternative bond, revolve around the financial circumstances of the parties—the bond requirement should be waived only under "extraordinary circumstances," which include either a showing by the appellant that his "ability to pay the judgment is so plain that the cost of the bond would be a waste of money," or that the bond requirement "would put [appellant's] other creditors in undue jeopardy." *Hamlin,* 181 F.R.D. at 353 (quotation marks and citation omitted); *see also Olympia Equip. v. W. Union Tel. Co.,* 786 F.2d 794, 796 (7th Cir. 1986); *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 757 F.Supp. 1101, 1104 (S.D. Cal. 1990). *See also Miami Int'l Realty Co. v. Paynter,* 807 F.2d 871, 873 (10th Cir. 1986) (looking instead at whether (1) "there is a showing that the prevailing party's judgment will not be jeopardized" or (2) "a [full] bond is impracticable [and other] adequate security is provided"). Additionally, even if an appellant persuades the court that a full bond is unnecessary, the court typically requires a substitute form of judgment guarantee. *See Olympia Equip.*, 786 F.2d at 796 (noting that both defendants with a clear ability to pay and those who would be bankrupted by a bond requirement are "candidate[s] for alternative security"). None of these circumstances applies clearly to Plaintiffs' argument for waiver of the bond. This is perhaps because

> [c]ourts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Hebert v. Exxon Corp.,* 953 F.2d 936, 938 (5th Cir. 1992). In other words, the applicability of Rule 62(d) turns on whether the judgment involved is monetary or non-monetary.

*Titan Tire Corp. of Bryan v. United Steel Workers of America, local 890L,* No. 09–4460, 2010 WL 815557, at * 1 (6th Cir. March 10, 2010). It is for this reason that Defendants contend that since the judgment denying the declaratory relief Plaintiffs sought does not bind the Plaintiffs to pay a specific sum of money, Rule 62(d) does not apply.

The conundrum, of course, is that Rule 62(d) suggests that all types of judgments other than those specifically excepted in subsection (a) may be stayed pending appeal as a matter of right if the appellant posts a supersedeas bond, or the court exercises its discretion to waive the bond. *Yankton Sioux Tribe v. S. Missouri Waste Mgmt. Dist.*, 926 F. Supp. 888, 889 (D.S.D. 1996) (citing *Becker v. United States,* 451 U.S. 1306, 1307, 101 S.Ct. 3161, 3162, 68 L.Ed.2d 828 (1981) (Rehnquist, J., as Circuit Justice) (observing that "[t]he language of Rule 62(d) seems clear, and the enumerated exceptions do not include tax summons enforcement proceedings."), *order vacated,* 452 U.S. 935, 101 S.Ct. 3073, 69 L.Ed.2d 949 (1981), and *United States v. Mansion House Ctr. Redev. Co.,* 682 F.Supp. 446, 448 (E.D. Mo. 1988) (granting stay pending appeal under Rule 62(d) because Rule 62(a) does not exclude mortgage foreclosure actions). *But cf. American Mfr. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 87 S.Ct. 1, 3, 17 L.Ed.2d 37 (1966) (Harlan, J., as Circuit Justice) (observing that "it seems to be accepted that a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d) and 73(d)[.]")). Further, Rule 62(c) does not plainly apply as Plaintiffs are not appealing a denial of injunctive relief.

Courts addressing entitlement to a stay pursuant to Rule 62(d) in cases such as this one— where the judgment appealed is neither clearly for monetary damages nor for injunctive relief, but is declaratory in nature or simply an order of the court—have relied on a deeper inquiry into

the nature of the judgment. Specifically, these courts consider whether the appeal is taken from a monetary judgment or its equivalent, or an injunction or its equivalent. *Yankton Sioux Tribe*, 926 F. Supp. at 889-91 (collecting cases).

For instance, in *Donovan* the plaintiff, OSHA, was awarded an order directing a defendant company to allow an inspection of a plant for OSHA violations. 696 F.2d 524, 526-27 (7th Cir. 1982). The Court found the defendants were not entitled to an automatic, unsecured stay under Rule 62(d). In construing Rule 62(d), the court noted: "The reference in Rule 62(d) to supersedeas bond suggests that had the framers thought about the point they would have limited the right to an automatic stay to cases where the judgment being appealed from was a 'money judgment,'" because the protections inherent in the posting of a bond only apply to money judgments. *Id.* at 526. It observed, therefore, that

> it is difficult to imagine how one would go about calculating the size of bond necessary to compensate OSHA and the workers on whose behalf it is acting for delay in getting into the plant to inspect. The requirement of a bond in Rule 62(d) does not fit a case like this. Since the requirement is meaningless here, to classify this case under Rule 62(d) would offend the spirit of the rule by giving an appellant an automatic stay without requiring him to compensate the appellee for delay in the entry of the final judgment.

*Id.* at 526-27. While the Seventh Circuit determined it did not need to decide "whether a judgment of civil contempt, if not enforced by an injunctive-type remedy, would still be within Rule 62(a)," as that question was not before it, it also observed that in the alternative, the plaintiff "could have sought, and presumably would have been granted," an injunction against the defendant's resisting the inspection. *Id.* at 527. Similarly, in *N.L.R.B. v. Westphal*, the Ninth Circuit adopted the rationale in *Donovan* to find that when the protections inherent to the Rule 62(d) bond requirements were applied to a subpoena compliance order, they were largely meaningless.  859 F.2d at 819. The Court reasoned that like in *Donovan*, "it would be difficult to

15

calculate the size of a bond necessary to compensate" the appellee for the delay in getting testimony and documents, and so Rule 62(d) did not fit the situation. *Id*. Further, as the appellant had not moved for a stay under Rule 62(c), the Court declined to reach that issue, denying the appellant's motion for a stay.

In contrast, in *Hebert v. Exxon Corp*., the Fifth Circuit found that a request for a stay pending the appeal of a declaratory judgment fell within the contours of Rule 62(d). 953 F.2d 936 (5th Cir. 1992). In that case, a party found liable for property damage sought a declaratory judgment to resolve a dispute between its primary insurer and excess insurer over the applicable limits of liability for the loss to be provided by the primary insurer. *Id*. at 936-37. The district court entered judgment, declaring the extent of the primary insurer's liability, which was less than the total amount of the judgment against the insured, thus leaving the excess insurer to pay the remaining amount. *Id*. at 937. The excess insurer appealed the declaratory judgment, and sought a stay pending appeal, filing a supersedeas bond equal to the portion of the judgment the court had found was applicable to it. *Id*. The district court held that because the judgment against the excess insurer was not a money judgment, Rule 62(d) did not apply. *Id*. On appeal of that order, the Fifth Circuit acknowledged that the *Westphal* and *Donovan* courts had restricted the application of Rule 62(d)'s automatic stay to money judgments because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment. *Id*. at 938. It disagreed with the district court, however, that the judgment was non-monetary within the meaning of Rule 62(d) simply because it took the form of a declaratory judgment:

> The district court's conclusion erroneously distinguishes between declaratory and money judgments. The applicability of Rule 62(d) turns not on that distinction, but on whether the judgment involved is monetary or nonmonetary, so long as the judgment is not otherwise excepted under Rule 62(a). Here, the district court's

> declaratory judgment binds Albany to pay a specific sum of money. Accordingly, both the language of Rule 62(d) and its underlying rationale entitle Albany to an automatic stay pending appeal in this case.

*Id*. The Sixth Circuit and some district courts have adopted this logic. *Titan Tire Corp. of Bryan*, 2010 WL 815557, at *1-2 (finding that a court order to provide back pay to a wrongly discharged employee bound the appellant to pay a specific sum of money, i.e., back wages, and thus under *Hebert*, a Rule 62(d) stay was appropriate, conditioned on a determination of the posting of a supersedeas bond in an amount determined by the district court); *Yankton Sioux Tribe*, 926 F. Supp. at 889-91 (denying under Rule 62(d) a stay pending appeal of a declaratory judgment that determined the jurisdictional boundary of the Yankton Sioux Reservation to assist in the resolution of a related case; finding the declaratory judgment determined a jurisdictional question and was not monetary in any respect).

This Court finds that under the rationales of *Donovan*, *Westphal* and *Hebert*, the appealed declaratory judgments, which declared Defendants' right to terminate the franchise agreements under O.R.C. § 1333.85(D) and avail themselves of the process to force the Plaintiffs to relinquish their rights to the Brands, effectively is monetary in nature. In essence, the judgment determines that Plaintiffs must relinquish the distribution rights over which they currently have possession, and those distribution rights are worth a specific sum of money. Indeed, the Court concluded that For Iron City, the value of the Brands is $302,720, and for Tri County, the value of the Brands is $2,757,459. Thus, a stay pursuant to Rule 62(d) is appropriate.

Both parties agreed during the diminished value hearing that the rights to the brands constitute intangible assets which have a quantifiable value that is determinable using a discounted cash flow ("DCF") analysis. Further, this Court held in its June 24, 2015 Findings of Fact and Conclusions of Law, (Doc. 135), that "[a]lthough the DCF analysis is based on a future projection of the Distributors' actual profits, it is actually a proxy for fair market value of the

17

Brands. In order to compensate fully Distributors for the loss of the Brands, therefore, this Court must arrive at a value of the Brands that the Distributors would reap on the open market." The fact that the statute instructs the Defendants also to compensate the Plaintiffs for that transfer does not undermine that the distribution rights currently are in the Plaintiffs' possession pending appeal and have a set monetary value.

This Court's determination that the declaratory judgment effectively is monetary in nature is supported by the old Civil Rule 73(d), which from 1938 to 1968 governed the conditions and amount of a supersedeas bond. *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 758-59 (D.C. Cir. 1980). Courts have acknowledged that "[a]lthough Rule 73 was among the rules abrogated and supplanted in 1968 by the Federal Rules of Appellate Procedure, and although the appellate rule covering the subject matter of old Rule 73(d) (Fed. R. App. P. 8) does not repeat Rule 73(d)'s detail, the substance of Rule 73(d) retains vitality inasmuch as it had simply codified judicial practice." *Id.* at 759 (citing *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979), and 9 Moore's Federal Practice P 208.05 at 8-14 (2d ed. 1980)); *see also* Charles Alan Wright, et al., 11 Fed. Prac. & Proc. Civ. § 2905 (3d ed.) (". . . former Rule 73(d) described what always has been good practice on a supersedeas bond, and, except as the matter now is regulated by local rules in a particular district, it is still a useful guide on these matters.") (footnotes omitted)).

Former Rule 73(d) provided as follows:

Whenever an appellant entitled thereto desires a stay on appeal, he may present to the court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award. When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such sum

18

as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the court after notice and hearing and for good cause shown fixes a different amount or orders security other than the bond. ***When the judgment determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclose mortgages or when such property is in the custody of the marshal or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay***.

As explained above, this Court's declaratory judgment determined the disposition of property in controversy. Although that property constitutes an intangible asset, it is property nonetheless. Accordingly, guided by former Rule 73(d), this Court finds that "the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay." Although Plaintiffs will continue to use the distribution rights to generate income pending the appeal, so too will Defendants receive income from Plaintiffs' continued distribution of the brands. The appropriate measure of the bond, therefore, is any projected damages brought about by the delay of the transfer of the brands, including interest on those damages.

Defendants have articulated their potential damage while the appeal is pending as the projected difference between the profits the Plaintiffs will generate for Defendants pending resolution of the appeal, and the profits Defendants speculate it would have made had it been able to transfer the brands to Superior presently. Defendants contend that having multiple distributors in the same market is costly, inefficient and leads to lower overall sales of the NAB portfolio. They support this contention with the example of what occurred in the marketplace before and after the NAB Brands were transferred from Esber Beverage Company to Superior a few years back. In that case, the year after the Defendants were able legally to transfer the rights to Superior, sales of the Labatt brands increased by 15% as compared to Esber's sales of the

19

brands in the same period the prior year. Defendants also argue that they may suffer a number of innumerable harms due to the common phenomenon of a distributor failing to invest in or grow the brands which they know may transfer to another distributor. Plaintiffs retort that Defendants provide no factual basis to support that they will lose profits, or that Plaintiffs would sabotage distribution networks. On the contrary, Plaintiffs have invested considerable money in defense of their distribution rights of the Brands, with the expectation that they will retain them after the appeal. This Court agrees that no logical evidence of sabotage exits on the record.

It is undisputed that the purpose of the supersedeas bond not only is to preserve the status quo for the sake of the appellant, but also to secure the appellee from loss resulting from a stay of execution, as well as to compensate it for the deprivation of the immediate benefits of its judgment. *Chang Lim v. Terumo Corp.*, No. 11-CV-12983, 2014 WL 2051219, at *1-2 (E.D. Mich. May 19, 2014) (citing *Westphal*, 859 F.2d at 819, *Moore v. Townsend,* 577 F.2d 424, 427 (7th Cir. 1978) (*citing Weiner v. 222 East Chestnut St. Corp.,* 303 F.2d 630, 634 (7th Cir. 1962))); *see also J. Perez & Cia., Inc. v. United States*, 578 F. Supp. 1318, 1319-21 (D.P.R.) *aff'd,* 747 F.2d 813 (1st Cir. 1984) (relying on Rule 73(d) to determine the appropriate amount of a bond pending appeal and emphasizing that the bond should fully compensate the appellee for its losses due to the appeal). Unlike in *Westphal* and *Donovan*, where the courts found it would be difficult to calculate the size of a bond necessary to compensate the appellee for the delay pending appeal, in this case the Court has ample grounds from which to estimate the purely monetary damage to the Defendants pending appeal. Specifically, Defendants have estimated that it stands to lose 15% of its yearly profits from the distribution of Brands in the Plaintiffs' respective territories. Accordingly, the Court hereby orders Plaintiffs to post bond in the amount of 15% of the profits Defendants reaped from Plaintiffs' distribution of the Brands in 2012, the

year before termination, times one and one-half, the average length of an appeal. Additionally, Plaintiffs are to post interest on that amount. Parties are to submit a joint stipulation of that total amount within ten (10) days of this order, upon which time the Court will approve the bond amount and order it posted.

Even if this Court had determined the judgment is better viewed as denying injunctive relief, a stay still would be appropriate in this case. The standards for granting a stay pending appeal are: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Titan Tire*, 2010 WL 815557, at *1. "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Further, to justify the granting of a stay,

> a movant need not always establish a high probability of success on the merits. *Ohio ex rel. Celebrezze*, 812 F.2d at 290 (citing *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. *Id.* Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4. (6th Cir.1977). For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." *DeLorean*, 755 F.2d at 1229 (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982)).

*Griepentrog*, 945 F.2d at 153-54. This Court finds that the equities pursuant to the above standard weigh in favor of granting a stay of the declaratory judgment. This case presents

serious, novel questions of statutory interpretation, regardless of the fact that this Court has determined previously that Plaintiffs are unlikely to succeed on the merits.

Further, in terms of the public interest, this Court's determination has the irrefutable potential to change dramatically the landscape for beer distribution in Ohio, especially considering the testimony elicited at the hearing related to the continued consolidation of beer manufacturers. While the Franchise Act can be read to express the public interest goal of permitting a successor manufacturer to assemble a new team of distributors upon acquiring a new manufacturer, it also expresses a clear interest in protecting local distributorships.

In addition, although both entities may suffer some financial damage, the Defendants' harm can be safeguarded through the posting of the above-delineated bond. It is a large corporate entity of which the Plaintiffs represent a small portion of its business. In contrast, Plaintiffs are small businesses which will be forced to make immediate adjustments, including the possibility that they will be forced to lay off a number of staff members. It would be difficult to recover from such changes, even if Plaintiffs ultimately were successful and the Brands were returned to them after the appeal. In the interest of maintaining the status quo, therefore, and in consideration of the equities, this Court finds that a stay under Rule 62(c) is also appropriate.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' motion is hereby **GRANTED in part and DENIED in part**. A stay pending appeal is hereby **GRANTED**. The Court hereby **ORDERS** Plaintiffs to post bond in the amount of 15% of the profits Defendants reaped from Plaintiffs' distribution of the Brands in 2012, times on and one-half. Further, Plaintiffs are to post interest on that amount.

Parties are to submit a joint stipulation of that amount within ten (10) days of this order, upon which time the Court will approve the bond amount and order it posted.

**IT IS SO ORDERED.**


                                                         _s/ Algenon L. Marbley_____
                                                         **ALGENON L. MARBLEY**
**DATED:  October 14, 2015**                             **UNITED STATES DISTRICT JUDGE**